

**2006 Decisions**

**Opinions of the United States Court of Appeals for the Third Circuit**

2-8-2006

# Vierra v. Wayne Memorial Hosp

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4510

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

## Recommended Citation

"Vierra v. Wayne Memorial Hosp" (2006). *2006 Decisions*. Paper 1622.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1622

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-4510

———

DEBORAH VIERRA

Appellant
v.

WAYNE MEMORIAL HOSPITAL

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 00-cv-01567)
District Judge: Honorable James F. McClure, Jr.

———

Argued January 31, 2006

Before: McKEE, VAN ANTWERPEN, and SILER,[*] <u>Circuit Judges</u>.

(Filed February 8, 2006)

Paul M. Jennings (Argued)
Employment Law Office
321 Spruce Street
Suite 1202, Bank Towers
Scranton, PA 18503


*Counsel for Appellant*

———

    [*]Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit,
sitting by designation.

Joseph S. Sileo (Argued)
Ufberg, Tressler & Sileo, L.L.P.
310 Penn Avenue
Scranton, PA 18503

*Counsel for Appellee*

_____

OPINION OF THE COURT

_____

VAN ANTWERPEN, Circuit Judge.

Appellant Deborah Vierra appeals from the District Court's grant of summary judgment to Wayne Memorial Hospital (the "Hospital") on her Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12,101 *et seq.*, claims. We have jurisdiction pursuant to 28 U.S.C. § 1291, and will affirm.

I.

Because we write solely for the benefit of the parties, we state the facts only as they pertain to our analysis.

Deborah Vierra, a nurse, began working for the Hospital's Home Health Department in 1992. Prior to this employment, Vierra suffered a leg injury while a medic in the military that resulted in her using a knee brace and potentially needing surgery. In 1995, she was promoted to a supervisory position at Home Health's Milford, Pennsylvania, location. Sometime in late 1998, when the director of Home Health's Honesdale, Pennsylvania, location was transferred, Vierra accepted that position. The Hospital claims over Vierra's denials that after the transfer, coworkers began complaining about Vierra's work

performance and professionalism. On January 12, 1999, Vierra's supervisor, Mary Lou Hoffner, told her that disciplinary action might be taken if Vierra's job performance did not improve.

On January 20, 1999, Vierra slipped on ice in her driveway and injured her left hand. She is right-handed. She went to work but then left to see a doctor, who diagnosed a broken index finger. The doctor instructed her to wear a removable splint for a month, and told her she could return to work. Upon return to the Hospital, she informed Hoffner of the injury. That day, Hoffner told Vierra to go home to heal. The next day, January 21, 1999, while Vierra was out of the office being fitted for her splint, a patient was referred to the Hospital for treatment. Hoffner had instructed Vierra upon her return to schedule the patient's treatment for that same day (January 21), but Vierra allegedly instead scheduled the treatment for the next day (January 22). Hoffner later admonished Vierra for her alleged mistake, and assigned a different nurse.

At the end of the day on January 21, 1999, Hoffner told Vierra that she was being temporarily suspended for a month so that she could heal from her injury, and because of complaints about her performance and professionalism. Hoffman also allegedly believed that Vierra could not satisfy standard nursing hygiene practices because she could not adequately wash her hands. Vierra later met several times with Hoffner and other directors and supervisors to address the issues Hoffner raised. On February 25, 1999, Vierra was removed from her supervisory position due to, she was told, her performance issues. Vierra was

3

offered a temporary non-supervisory nursing position, which she refused through counsel. The Hospital deemed the refusal a "voluntary resignation." On March 20, 1999, Vierra filed a discrimination charge with the United States Equal Employment Opportunity Commission ("EEOC"), which later dismissed the charge and issued a right to sue letter. Vierra then filed a complaint in the United States District Court for the Middle District of Pennsylvania. Subsequently, Vierra filed a second EEOC charge alleging retaliation.

On November 8, 2004, the District Court, which had jurisdiction pursuant to 28 U.S.C. § 1331, granted the Hospital's motion for summary judgment. The District Court first ruled that Vierra stated only a "regarded as disabled" claim, and not an "actually disabled" claim, and that the "regarded as" claim as pleaded in her EEOC charges related only to her hand injury. Evidence related to her preexisting knee injury was therefore deemed irrelevant. The District Court also held that the retaliation claim was properly before the court, even though it was not included in the first EEOC charge. On the merits, the District Court ruled that Vierra could not establish a *prima facie* disability discrimination case, because the condition the Hospital allegedly regarded her as having – a broken finger, requiring the use of a removable splint for about a month – was not a disability within the meaning of the ADA. Finally, the District Court ruled that Vierra could not establish a *prima facie* retaliation claim because she did not show a protected activity in which she engaged, that causally led to the Hospital's adverse action. Vierra now appeals the District Court's November 8, 2004 Order.

4

## II.

We exercise plenary review over the District Court's grant of summary judgment, and apply the same standard as the District Court. *Citizens for Health v. Leavitt*, 428 F.3d 167, 175 (3d Cir. 2005). "To affirm the grant of summary judgment, we must be convinced that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law when the facts are viewed in the light most favorable to the nonmoving party." Id. (quoting Fed.R.Civ.P. 56(c))

## III.

To avoid summary judgment on an ADA claim, Vierra must show a *prima facie* case of discrimination; the Hospital must then "articulate some legitimate, nondiscriminatory reason" for its decision; finally, Vierra must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause" of the decision. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (stating the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993), tests).

## IV.

On appeal, Vierra failed in her brief to challenge the District Court's conclusion that evidence related to her knee injury was irrelevant because her EEOC charges and federal complaint referenced only her finger injury. We also reject Vierra's claim at argument that

5

she was not required to plead – or even deign to reference – the knee injury as the fundamental basis of her ADA claims merely because defendants were already aware of the injury. We therefore, like the District Court, will consider Vierra's "regarded as disabled" claim only as it applies to her finger injury.[1]

### A. "Regarded as Disabled" Claim

Vierra claims the Hospital discriminated against her because it "regarded" her as disabled.[2] The District Court held that because Vierra could not show a *prima facie* case of disability discrimination, summary judgment should be granted to the Hospital. We agree.

In order to establish a *prima facie* disability claim, Vierra must show that "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751,

---

[1]Although Vierra's EEOC charges and District Court complaint accused the Hospital of regarding her as disabled because of her finger injury, Vierra's deposition cited only her knee as the cause of any perceived disability, and even alleged for the first time that she was *actually* disabled because of her knee injury. We will, for the purpose of summary judgment, ignore this curious discrepancy in the name of affording Vierra every possible inference in her favor.

[2]Vierra somewhat confusingly now argues that there is a "material issue of disputed fact" because the District Court allegedly thought Vierra was presenting an "actually disabled" claim. First, we note that a genuine issue of material fact is only presented by the record, and not by anything the District Court may have done. Second, contrary to Vierra's assertions, at all times the District Court correctly noted and held that Vierra presented a "regarded as disabled" claim.

761 (3d Cir. 2004) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). "Disability" within the meaning of the ADA means, relevant here, that Vierra had a "physical or mental impairment that substantially limits one or more major life activities of such individual," or was "regarded as having such an impairment." 42 U.S.C. § 12102(2)(A), (C). We must decide, therefore, whether the Hospital *regarded* Vierra as having a condition that "substantially limits one or more major life" activity; Vierra's actual limitations and impairments are irrelevant for our purposes.

As the District Court correctly noted, "substantially limited" means that the Hospital must have believed Vierra had a condition rendering her:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). We consider such factors as "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2), *quoted in Williams*, 380 F.3d at 762.

At most, the Hospital could have regarded Vierra as having a broken finger which required the use of a removable splint for a month – as Vierra herself informed Hoffner.[3]

---

[3]We recognize that because it is the employer's perception which matters, and not the employee's actual limitations, then the Hospital might theoretically have perceived Vierra as having a much more severe and permanent impairment. *See Williams*, 380 F.3d at 770

7

This is simply not a substantially limiting impairment within the meaning of the ADA. The Hospital may have believed that for that one month, Vierra was unable to conform to nursing hygiene standards due to her use of a splint, removable or not. However, Vierra presented no evidence to dispute that the Hospital saw her as having a temporary, non-severe injury without *permanent* or *long-term* impact. See also 29 C.F.R. app. § 1630.2(j) ("[T]emporary, non-chronic impairments of short duration . . . are not usually disabilities. Such impairments include . . . broken limbs."). Therefore Vierra cannot establish the first part of her *prima facie* ADA case – that she was "regarded as disabled" within the meaning of the ADA.[4] We will affirm the District Court's grant of summary judgment on this claim.[5]

## B. Retaliation

Vierra next claims that the Hospital retaliated against her by removing her supervisory

n.14 ("[A] 'regarded as' plaintiff can make out a case [even] if the employer is innocently wrong about the extent of his or her impairment.") (quoting *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 191 (3d Cir. 1999)) (second alteration in original). However, where Vierra specifically informed the Hospital of her condition and 1-month recovery prognosis, where the employer at issue is in the field of medical diagnosis and treatment, and where Vierra has produced *no* evidence to suggest that the Hospital did in fact consider her injury to be anything more than temporary, we cannot accept Vierra's argument that the Hospital regarded her as having a substantial impairment.

[4]On appeal, Vierra argues that "of course" she was entitled to an "inference" that she could support a *prima facie* discrimination case, but she fails entirely to establish any genuine issue of material fact on the subject. If, as we hold here, Vierra cannot make out a *prima facie* discrimination case, any issues of fact regarding the Hospital's explanation of the employment action, and possible pretext arguments by Vierra, are simply not material.

[5]We therefore need not reach the rest of the *McDonnell Douglas* test, regarding the Hospital's non-discriminatory explanation for Vierra's suspension and release, and Vierra's rebuttal of such explanation.

8

duties after she complained about her suspension and refused to take the offered alternate temporary nursing position. The District Court ruled that Vierra failed to show both that she engaged in any type of protected activity, and that if she had, it was causally related to the Hospital's ultimate decisions. Vierra conceded at argument that she cannot show a *prima facie* retaliation claim under the ADA, however even without this concession we will affirm the grant of summary judgment to the Hospital on this claim.

For a claim of retaliation under the ADA, Vierra must show three requirements: (1) a "protected employee activity" on her part; (2) that the Hospital took an "adverse action either after or contemporaneous" with the protected activity; and (3) a "causal connection" between the protected activity and the adverse action. *Williams*, 380 F.3d at 759 (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002)). We agree with the District Court that Vierra never opposed the Hospital's actions *on the basis of* alleged disability discrimination, and never engaged in a protected employee activity. Logically, the Hospital cannot then have retaliated against her within the meaning of the ADA. We therefore need not reach the remainder of the elements in the retaliation claim; however, we note our agreement with the District Court that even if Vierra had complained that the decision to suspend and remove her was discriminatory, the Hospital was not required to instead rescind its decision. The decision to terminate Vierra was made *before* she engaged in anything that might constitute a protected activity, not after, and therefore cannot have been causally related to the activity. We will affirm the grant of summary judgment on the

9

retaliation claim.

V.

For the foregoing reasons, we conclude that the District Court properly granted the Hospital's motion for summary judgment against Vierra, and will affirm. We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary.